Jack Stakislaw, J.
This action is one to impress a trust upon eight accounts in the names of the individual defendants held in three separate New York banks. Plaintiff Martens now moves for summary judgment.
Martens’ claim that the funds in question were formerly contained in nine different accounts in three Florida banks is not contradicted. These had been held jointly by plaintiff and his wife, now deceased. The defendants, the children of the deceased wife, also do not dispute the assertion that their mother withdrew the moneys in the Florida joint accounts and that these withdrawals actually constitute the subject New York accounts. The latter are subject to a temporary injunction, previously issued, preventing any transfer pending this determination.
It is first necessary to determine the rights and interests of plaintiff and his wife in the joint Florida accounts, a matter of Florida law. (5 N. Y. Jur., Banks and Trust Companies, § 243; Matter of Kugel, 192 Misc. 61; Matter of Kienle, 139 N. Y. S. 2d 150; Matter of Buckley, 32 Misc 2d 928, revd. on other grounds 17 A D 2d 937, affd. 13 N Y 2d 1012.) But the defendants argue that any issue involving the construction, interpretation or application of foreign law raises a question of fact precluding summary judgment based upon that law. Formerly, it was a matter of discretion whether or not judicial notice be taken of applicable foreign law. However, this discretion has been eliminated (CPLR 4511), and notice now must be taken judicially of the relevant common and statutory law of a sister State though neither pleaded nor proved (Monko v. Cicoria, 46 Misc 2d 565; State St. Props, v. Mizrahi, 44 Misc 2d 964; Gevinson v. Kirkeby-Natus Corp., 26 A D 2d 71). Although the courts previously withheld judicial notice of foreign law in many cases, with the result that summary judgment was only rarely available for that reason, the effect of the procedural change evidenced by CPLR 4511 is to demand that notice be taken and thus judgment awarded where otherwise warranted.
We proceed to our examination of Florida law. In that State a joint account is not immediately the true and full equivalent of a joint tenancy or tenancy by the entireties (Spark v. Canny, 88 So. 2d 307 [Fla.]; Chase Fed. Sav. Loan Assn. v. Sullivan, 127 So. 2d 112 [Fla.]). The nature of the estate is instead governed by the intent of the parties concerned at the time the account was set up (Hagerty v. Hagerty, 52 So. 2d 432 [Fla.]).
*204 Martens claims that it was his intent to establish the Florida accounts for the convenience of his Avifo and himself. The defendants insist that this alleged intent raises a question of fact which defeats the motion. They argue too, that at any rate the contribution of $10,000 by the wife to the $90,000 contained in the nine original Florida accounts presumptively results in a tenancy by the entirety as to the whole to the exclusion of any issues as to intent.
The Florida courts have addressed themselves to the relationships involved through the creation of joint tenancies by adopting and then reiterating the following language: ‘ ‘ Either spouse presumptively has the porver to act for both, so long as the marriage subsists, in matters of the entireties, Avithout any specific authorization, provided the fruits or proceeds of such action inures to the benefit of both and the estate is not terminated. But neither may by such action destroy the true purpose of the estate by attempting to convert it or a part of it, in bad faith, into one in severalty.” (Madden v. Gosztonyi Sav. & Trust Co., 331 Pa. 476, 489, followed in Anderson v. Carter, 100 So. 2d 831 [Fla.].) Therefore, in New York (Matter of Keinle, 139 N. Y. S. 2d 150) Ave permit a surviving joint tenant to trace funds withdrawn from a joint account Avithout his knowledge or consent as indicated in the law of Florida (Lerner v. Lerner, 113 So. 2d 212 [Fla.]; Burke v. Coons, 136 So. 2d 235 [Fla.]; McGillen v. Gumpman, 171 So. 2d 69 [Fla.]).
In other Avords, regardless of the presumption attaching to the Florida accounts, which incidentally is a rebuttable one (Spark v. Canny, 88 So. 2d 307 [Fla.], supra), or plaintiff’s purported intent to have these merely for convenience (cf. Winters v. Parks, 91 So. 2d 649 [Fla.]; Matter of Lyon, 90 So. 2d 39 [Fla.]), it appears that once in existence the accounts Avere subject to a limitation of their use to the mutual benefit of the joint tenants. Once the deceased wife withdrew the moneys for her oAvn private use she breached a duty as a joint tenant which was imposed upon her notwithstanding any of the factors allegedly affecting the initial creation of the accounts (see Andrews v. Andrews, 155 Fla. 654).
The defendants do not suggest that the wife’s withdrawal of $90,000 from the Florida accounts and her subsequent creation of $90,000 in trust and joint accounts for and with them in New York was an act benefitting both tenants within the purposes of the entirety. Nor do defendants assert any possibility of the plaintiff’s intent to alloAV his wife to so treat these accounts. Therefore, assuming defendants’ propositions that the Florida accounts were not convenience joint accounts and that they *205 instead simply involved tenancies by the entireties, Martens has the ability to trace the funds (as noted, supra) and take possession of them whether as surviving joint tenant or as the continuing owner.
The motion is granted to the extent of the eight remaining accounts in this jurisdiction, possession of which shall be delivered to plaintiff. As to the ownership of the proceeds of a $5,000 joint checking account closed by the deceased wife and any balance of an already closed $10,000 New York account the motion is denied. These latter carry with them questions of fact concerning the source of the funds involved, whether any disposition of them was or was not made within the purposes of the tenancy, and whether there was an entirety as to these moneys at all in the first instance.
We briefly note that we are unable to agree with defendants’ insistence that summary judgment be denied merely because they have been unable to examine plaintiff before trial. Either defendants can raise factual issues, which they obviously have not been able to do, or they cannot, and to infer that they might if plaintiff could be examined is another way of asking for a fishing expedition. However, they may examine regarding the issues reserved within thirty days of the appearance of the remainder of this action on the Ready Day Calendar and seek particulars as to these remaining issues.