**BRITISH MIDLAND AIRWAYS LIMITED, Plaintiff-Appellee,**

v.

**INTERNATIONAL TRAVEL, INCORPORATED, Defendant-Appellant.**

No. 73-2994.

United States Court of Appeals, Ninth Circuit.

June 3, 1974.

Gerald F. Collier (argued), Seattle, Wash., for defendant-appellant.

Oliver Malm (argued), of Lee, Krilich, Lowry & Thompson, Tacoma, Wash., for plaintiff-appellee.

Before MERRILL and WALLACE, Circuit Judges, and BURNS,* District Judge.

BURNS, District Judge:

This action was brought to enforce a judgment obtained in the High Court of Justice in England. The District Court found the British judgment to be valid and enforceable. We agree and affirm.

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

Plaintiff-Appellee, British Midland Airways Limited (BMA), a corporation organized under the laws of the United Kingdom, and Defendant-Appellant, International Travel, Inc. (International), a Washington corporation, entered into a contract on May 14, 1971, providing for an agency to arrange charter flights from the western United States and Canada to England. In Clause 12 of that contract, the parties agreed to be "governed by the laws of England" and to submit "any dispute arising (from the contract) or in relation thereto" to the High Court of Justice in England. Approximately one year later, such a dispute did occur, and BMA sued International for breach of contract in the Queen's Bench Division of the High Court of Justice in London, seeking damages of £82,455.93 ($201,788.00), plus interest ($18,864.00) and costs ($1,200.00).

International's British attorneys entered an unconditional appearance (not contesting jurisdiction) to defend the lawsuit. BMA filed a motion pursuant to British Order 14, Rule 1(1)[1], a procedure which roughly parallels our Rule 56 summary judgment procedure. Additional rules under Order 14 allow the Court to "give a defendant against whom such an application is made leave to defend the action with respect to the claim, or the part of a claim, to which the application relates either unconditionally or on such terms as to giving security or time or mode of trial or otherwise as it thinks fit." Order 14, Rule 3.

The motion was granted by a Master (a "junior" judge similar to a United States Magistrate) in August, 1972, but International was still given leave to defend if it deposited an amount equal to the prayer of the complaint with the Court. Both parties appealed this order.

BMA maintained that its motion should have been granted outright (with no conditional defense allowed). International contended it should be allowed to defend without being required to make any deposit. No transcripts are made of these proceedings, but a "certificated bundle of documents" containing affidavits and other papers is filed.

The appeals were heard in November, 1972, by Justice Forbes of the High Court of Justice, Queen's Bench Division, Supreme Court of Judicature, England, who decided that International had not made a prima facie showing of any valid defense, with the possible exception of the claim for cancellation charges. Accordingly, the judge ordered the deposit diminished by that amount of the alleged damages, but ruled that if the money was not deposited within the month, judgment for BMA for the full claim would be entered. At this point, International could have appealed again to a higher court, but failed either to pursue this remedy or to make the deposit. Judgment was then entered for BMA in the amount originally claimed, together with interest and costs on December 14, 1972.

In February, 1973, BMA brought this action in the United States District Court for the Western District of Washington to enforce the British judgment. Based on the same material which compiled the record in the High Court of Justice, the District Court granted BMA's motion for summary judgment in August, 1973, and denied a motion for rehearing in October, 1973. International's opposition to the motion was grounded on principles of comity, namely, its claim that the action of the British courts denied it due process in (1) requiring the deposit as a prerequisite to defending the lawsuit and holding International in "default" for its failure to

---

1. Order 14, Rule 1(1) provides:
   "Where in an action to which this rule applies a statement of claim has been served on a defendant and that defendant has entered an appearance in the action, the plaintiff may, on the ground that the defendant has no defense to a claim included in the writ, or to a particular part of such a claim, or has no defence to such a claim or part except as to the amount of any damages claimed, apply to the Court for judgment against that defendant."

comply with that order; and (2) not recording the proceedings and not allowing proof of damages to be submitted.

We find it unnecessary to decide BMA's contention that any foreign judgment is conclusive under Washington law unless the foreign court exceeded its jurisdiction.[2]  We agree in this case with the Third Circuit's view, stated in a similar British default case, that "English procedure comports with our standards of due process." *Somportex,* supra at 444.  It has long been the law that unless a foreign country's judgments are the result of outrageous departures from our own motions of "civilized jurisprudence," comity should not be refused.  Hilton v. Guyot, 159 U.S. 113, 205, 16 S.Ct. 139, 40 L.Ed. 95 (1895).[3]

United States courts which have inherited major portions of their judicial traditions and procedure from the United Kingdom are hardly in a position to call the Queen's Bench a kangaroo court.  Indeed, it appears that Order 14 was the forerunner of our summary judgment rule.[4]  In fact, a rational observer could well conclude that it is superior to our own practice.  The British judges afforded International ample opportunity to present affidavits and argue its case.

It was International's choice not to pursue the matter on appeal or take advantage of the conditional defense allowance.  International initially agreed to be bound by British law.  Where contractual parties themselves freely agree that their disputes are to be litigated in the courts of the United Kingdom, we will not disturb such a choice.  We need not consider whether the result would be otherwise if between the time when the contract was signed and the litigation

commenced a change occurred in the English judicial system which radically altered either the substantive rules of law or the procedure by which such were administered.  As Judge Aldisert observed in the *Somportex* case (which both parties have cited as leading authority in this case), we not only look with skepticism, but we flatly reject the due process complaint of a party who "was given, and * * * waived, the opportunity of making the adequate presentation in the English Court."  453 F.2d at 441.

Affirmed.

---

2. Because this is a diversity action, the law of the forum with respect to comity should be applied.  Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3 Cir. 1971), cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).  BMA cites the Washington rule as set forth in Alberta Lumber Co. v. Pioneer Lumber Co., 138 Wash. 132, 244 P. 250 (1926).  International maintains that this rule specifying proper jurisdiction as the sole prerequisite

to enforceability has become outmoded and has been replaced by the enlightened, but vague, standard of "public policy."

3. In *Hilton,* the French judgment was enforced even though the plaintiff complained that the testimony was unsworn, there was no cross-examination and improper evidence was admitted.

4. See Rule 56, F.R.Civ.P., Notes of Advisory Committee on Rules.