OVERSEAS DEVELOPMENT BANK IN LIQUIDATION, Respondent, v NAFTALI CHAIM NOTHMANN et al., Appellants.

Second Department, October 22, 1984

APPEARANCES OF COUNSEL

*David S. J. Neufeld* for appellants.

*Cadwalader, Wickersham & Taft (Terence F. Gilheany, Peter G. Bergmann* and *Joseph J. Schiavone* of counsel), for respondent.

OPINION OF THE COURT

BROWN, J.

The issue on these appeals is whether two English money judgments may be enforced in New York in pursuance of the provisions of CPLR article 53. We conclude that at the time plaintiff commenced this action to enforce the

judgments against the defendants, those judgments were not enforceable under English law and, therefore, as a matter of law, were not entitled to recognition in New York under article 53.

It appears from the record herein that from the mid-1960's until the early 1970's defendants, through several corporations, operated two rare bookstores and a literary press in London. During that period the defendants executed a series of personal guarantee demand notes securing loans made to the corporations by plaintiff's predecessor, the Overseas Development Bank. In or about June, 1974, when the corporations and defendants failed to pay the notes, a receiver was appointed under English law to take over the daily operation and management of the corporation. Plaintiff claims that shortly after the appointment of the receiver, the defendants removed a significant portion of the bookstores' inventories of rare books from England and left the country. Plaintiff thereupon commenced an action against defendants in the High Court of Justice, Queens Bench Division, to enforce the loan guarantees. Sometime in November, 1974, plaintiff discovered that the defendants were living in Dublin and obtained leave of the English court to effect substituted service of the summons upon them in Ireland. Thereafter, an English law firm entered a memorandum of appearance in the action on behalf of defendants and, after a hearing on the matter, the High Court of Justice, on April 25, 1975, rendered a judgment in favor of plaintiff in the sum of 125,000 pounds sterling. Thereafter, on June 17, 1975, a further judgment was rendered in favor of plaintiff against the defendants in the sum of 95,516.50 pounds sterling. By the time the second of the two judgments had been rendered, plaintiffs became aware that defendants had left Ireland for the United States.

Apparently no further legal steps were taken by plaintiff to enforce the judgments until nearly seven years later when plaintiff moved at Special Term, Nassau County, for an ex parte order of attachment against the property of defendants pursuant to CPLR 6201 and 6211 on the ground that its cause of action was based upon two judgments entitled to recognition under CPLR article 53 (CPLR 6201, subd 4), or alternatively, on the ground that defendants

had disposed of or secreted assets in an attempt to frustrate the enforcement of the judgments (CPLR 6201, subd 3). Plaintiff's motion was granted and an ex parte order of attachment was entered by Special Term (Pantano, J.), on April 22, 1982. Subsequently, by order dated August 16, 1982, Special Term (McCaffrey, J.), confirmed the order of attachment.

On or about May 2, 1982, shortly after the entry of the order of attachment, plaintiff commenced an action to enforce the judgments upon which the attachment was based in the Supreme Court, Suffolk County, by service of a summons and a notice of motion for summary judgment in lieu of a complaint. In support of its application for summary judgment in its favor, plaintiff alleged, *inter alia,* that the judgments in question were "final, conclusive and enforceable" in England, within the meaning of CPLR 5302, and that the English court rendering the judgments had personal jurisdiction over defendants. Accordingly, plaintiff argued, under CPLR article 53 it was entitled to summary judgment in its favor.

Defendants opposed the motion for summary judgment on a number of grounds including, *inter alia,* claims that the court issuing the English judgments lacked personal jurisdiction over them, that they had never appeared in the original action to recover on the notes and that they had not been afforded an adequate opportunity to do so. They claimed that the personal guarantee notes that they had executed were limited to an amount not to exceed 15,000 pounds sterling; and further that the receiver who had been appointed to manage the bookstores had sold the inventory for an exceedingly low price. In addition, they argued that the English judgments were not presently enforceable in England in view of the fact that more than six years had elapsed since the judgments had been rendered and under English law an action to enforce those judgments in England was time barred. Defendants also advised the court that an application to vacate the judgments was pending in England and requested that all further proceedings be stayed pending resolution of that application. It appears, also, that defendants had obtained a temporary ex parte stay of execution of the judgments in

England. That stay was, however, vacated on June 28, 1982, and apparently the application to vacate the judgments was thereafter withdrawn.

Special Term (Baisley, J.), rejected defendants' arguments as to why the English judgments should not be accorded recognition and granted summary judgment in favor of plaintiff in the principal sum of $916,566.40. In its memorandum decision the court addressed the question of the purported time bar to enforcement of the judgments in England as follows:

"The plaintiff contends that the judgments are enforceable by writ of execution (referred to as fieri facias). It is conceded by both sides after six years from the date of judgment such writs to enforce judgments cannot be employed without obtaining leave of Court. The plaintiff has submitted proof by experts on the laws of the United Kingdom that applications for such writs are routinely granted and would certainly be permitted in view of the facts surrounding these judgments and their attempted enforcement. The defendants submit proof of similar experts who reach a contrary opinion. The defendants' experts maintain that an application for a writ of execution would not be granted in a factual situation similar to the one now present.

"Thus, the defendants' claim that this Court must determine if the judgments in question are enforceable under the laws of the United Kingdom. However, the Court is spared this task by virtue of the actions taken by the courts in the United Kingdom. For it is undisputed that the defendant Naftali Nothmann, appearing by his sister obtained ex parte from a British Court a stay of both judgments. That stay was later vacated upon a contested hearing at which time defendants were represented by competent counsel. The stay was vacated and in passing the Master remarked that the issue was 'otiose,' the precise meaning and context of which is not readily apparent. That determination vacating the stay was appealed and on appeal affirmed and an application for a further stay was denied. Thus, the Courts in the United Kingdom have failed to date, to vacate the judgments or to declare said judgments unenforceable, or to stay the enforcement of

these judgments. Thus, the clear inference is that the Courts of the United Kingdom have treated the judgments as capable of enforcement provided plaintiff seeks prior leave of an English Court for the issue of a Writ of Execution."

CPLR article 53 (Uniform Foreign Money-Judgments Recognition Act), which governs the recognition of foreign country money judgments in New York, represents a partial codification of the common-law rules regarding recognition of foreign country judgments. The purpose behind the adoption of the uniform act was not so much to aid in the recognition of foreign judgments in this State — which had a well-established body of case law in this area according conclusive effect to most final foreign judgments — as it was to broaden the prospects for enforcement of New York judgments abroad. Notwithstanding New York's extensive case law, many foreign countries with strict reciprocity requirements regarding enforcement of foreign judgments had refused to accord recognition to New York judgments absent some statutory manifestation that their own judgments would be entitled to enforcement in New York (see Thirteenth Ann Report of NY Judicial Conference, 1968, p 195). The scope of article 53 is broad and basically encompasses judgments from those foreign jurisdictions which are not entitled to recognition under the full faith and credit clause of section 1 of article IV of the United States Constitution (CPLR 5301). There is no dispute that the English judgments at bar fall within the scope of the article.

It should be noted that the application of article 53 is specifically limited to money judgments. Thus, for purposes of the article, the term "foreign country judgment" is defined as "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters" (CPLR 5301, subd [b]). That is not to say, however, that other types of foreign judgments will be denied enforcement in New York. Rather, enforcement in those situations is governed instead by common-law principles and existing case law which, as noted above, were well established and afforded a

framework for according recognition to most foreign country judgments. It is clear that in enacting article 53 the Legislature did not intend to preempt this body of law. Indeed, it was specifically provided that "[t]his article does not prevent the recognition of a foreign country judgment in situations not covered by this article" (CPLR 5307; see, also, Thirteenth Ann Report of NY Judicial Conference, 1968, pp 195, 224; 6 Weinstein-Korn-Miller, NY Civ Prac, pars 5301.03, 5307.01). For our purposes, however, it is evident that the English money judgments in question come directly within the scope of article 53. Article 53 applies to any foreign country judgment which is "final, conclusive and enforceable where rendered, even though an appeal therefrom is pending or it is subject to appeal" (CPLR 5302).

Except for certain grounds for denying recognition, some of which are mandatory and others of which are discretionary (CPLR 5304), any foreign country judgment which satisfies the requirements of CPLR 5302 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money (CPLR 5303). Such a judgment may be enforced, *inter alia,* by an action on the judgment or, as here, by a motion for summary judgment in lieu of a complaint (CPLR 5303). The grounds for denying recognition are as follows:

"§ 5304. Grounds for non-recognition

"(a) No recognition. A foreign country judgment is not conclusive if:

"1. the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

"2. the foreign court did not have personal jurisdiction over the defendant.

"(b) Other grounds for non-recognition. A foreign country judgment need not be recognized if:

"1. the foreign court did not have jurisdiction over the subject matter;

"2. the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;

"3. the judgment was obtained by fraud;

"4. the cause of action on which the judgment is based is repugnant to the public policy of this state;

"5. the judgment conflicts with another final and conclusive judgment;

"6. the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

"7. in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action."

While the defendants have asserted a number of grounds both mandatory and discretionary for denying recognition to the judgments under CPLR 5304, including lack of personal jurisdiction by the foreign court, lack of opportunity to appear and defend the foreign action, and fraud, we need not address the merits of these contentions since, in our view, resolution of this case rests upon a determination of the threshold issue of whether the English judgments are "final, conclusive and enforceable where rendered" within the meaning of CPLR 5302.

Our determination necessarily involves an interpretation of English law on the subject of enforcement of judgments. Under the rules of evidence, a court may take judicial notice of the laws of foreign countries (CPLR 4511, subd [b]; see, also, Richardson, Evidence [Prince, 10th ed], § 20, p 13). Where the court takes judicial notice of the law of a foreign country, the construction of that law is an issue to be decided by that court as a matter of law and thus is a proper issue for resolution on a motion for summary judgment (CPLR 4511, subd [c]; see, also, *Rosman v Trans World Airlines,* 34 NY2d 385; *Kahn v Trans World Airlines,* 82 AD2d 696; *Martens v Bethel,* 51 Misc 2d 202). Of course, in order for the court to be in a position to take judicial notice of such matters, it must be provided with sufficient information to ascertain the substance of the foreign law (see 5 Weinstein-Korn-Miller, NY Civ Prac, pars 4511.03, 4511.04). In this regard, both sides submitted expert opinions in the form of affidavits from several English barristers and soliciters as to the meaning and

substance of the law in England concerning enforcement of judgments. The submissions included copies of the relevant statutes, rules and case law. Based upon these submissions, we take judicial notice of the law of England concerning the enforceability of the judgments and upon taking such notice we conclude that at the time this action was commenced the judgments against the defendants were not enforceable in England.

The English Limitation Act of 1980 (L 1980, ch 58), which was effective May 1, 1981, provides in pertinent part, that "[a]n action shall not be brought upon any judgment after the expiration of six years from the date on which the judgment became enforceable." The experts for both sides agree that, under this statute, at the time that plaintiff commenced the instant action it was barred from bringing an action to enforce the judgments in England. The experts are also in agreement that an alternative method of enforcing a judgment in England is by writ of execution. And, with the exception of one of defendants' experts who finds the point arguable, the experts seem to be in agreement that notwithstanding the expiration of six years, the judgments in question are capable of enforcement by writ of execution. The issuance of writs of execution in England is governed by Order 46 of the Rules of the Supreme Court, which has the effect of law. That order applies, *inter alia,* to a writ of *fieri facias,* which is defined as "a writ of execution commanding the sheriff to levy and make the amount of a judgment from the goods and chattels of the judgment debtor" (Black's Law Dictionary [rev 4th ed], p 754). This is the writ by which plaintiff claims the instant judgments are enforceable.

Order 46 also provides, however, that "[a] writ of execution to enforce a judgment or order may not issue without leave of the Court [*inter alia*] where six years or more have elapsed since the date of the judgment or order" (Order 46, rule 2[1][a]). It is further provided that such an application for leave to issue a writ of execution may be made ex parte unless the court directs it to be made by summons. The experts for defendants contend that in practice it would be rare for a court to grant leave in a case of delay such as is here present on an ex parte basis rather than directing the

applicant to proceed by summons *inter partes*. They have submitted a number of cases and treatise references in support of this proposition (see *National Bank v Cullen* [1894] 2 Irish Rep 683; *Matter of Clements* [1901] 1 QB 260; *Fleet Mtge. & Inv. Co. v Lower Maisonette 46 Eaton Place* [1972] 2 All E R 737, 1 WLR 765; Supreme Ct Prac, 1982, vol 1, pp 776-778; Chitty & Jacob's, Queens Bench Forms [20th ed, 1969], ch 56, pp 560-561).

Plaintiff's expert, on the other hand, while not conceding the validity of the conclusion reached by defendants' experts, does concede that, on the facts of this case, were such an application to have been made, it would have been desirable to afford defendants an opportunity to be heard. In our opinion, however, the question of whether or not such writ would issue ex parte is not critical to these appeals. What is critical and where the parties sharply disagree is the question of whether, in the absence of an application for leave to issue a writ of execution, the judgments may be considered enforceable under English law for purposes of the application of CPLR article 53. Interestingly enough, plaintiff's expert takes no position on this question, asserting that it is a question of New York law, as to which he is unable to express an opinion. What he does state, however, is that in his opinion, while the possibility of actually uncovering any assets of defendants in England upon which to execute is unlikely, if plaintiff made an application under Order 46 for leave to issue a writ of execution to assist the enforcement of the judgments here, then he could see no reason why the English courts would refuse to issue the writ.

Defendants' experts, on the other hand, are of the opinion that until such time as leave is granted, the judgments are not enforceable in England. Moreover, they express the view that even if such an application were made, it remains questionable as to whether the English courts would grant leave to issue the writ.

We must agree with the defendants' position. While it may very well be, as plaintiff's expert postulates, that the English courts would readily grant an application for leave to issue a writ of execution, we cannot speculate in reaching our decision as to what course the English courts might

follow. Under CPLR article 53, our function is to determine whether the judgment is, in fact, at the time of the bringing of proceedings for its enforcement in New York, "final, conclusive and enforceable" in the foreign jurisdiction where it has been rendered (CPLR 5302). If the judgment satisfies that condition, then, absent proof of some basis for nonrecognition (CPLR 5304), we are obliged to afford it conclusive effect in New York (CPLR 5303). Such would be the case had the action herein been commenced prior to the expiration of the six-year period under English law from the time the judgments became enforceable in that country. In that instance, and absent any finding of a basis for nonrecognition, enforcement of the judgments herein by the New York courts would be mandated.

In this case, however, plaintiff, whether justifiably or not, permitted its judgments to become stale under English law by failing to execute thereunder within six years. In order to recover on the judgments under English law, it was necessary for plaintiff to revive its right of enforcement through the procedures outlined in Order 46. It was required under Order 46 that an application for leave to issue a writ be made to the English court — an application directed to the sound discretion of that court (*Lamb & Sons v Rider* [1948] 2 KB 331). While the arguments made by plaintiff that, notwithstanding the delay in seeking enforcement, it should be permitted to enforce the judgments may well be persuasive, those arguments are properly addressed to the English courts and not to the New York courts. It is by no means a foregone conclusion that if the application for leave to issue the writ of execution were made in England, it would be granted. It remains within the English court's discretion under English law to deny the application and thus preclude enforcement of the judgments (*Lamb & Sons v Rider, supra*). Regardless of the outcome, however, the question remains one to be addressed to the discretion of the English court which rendered the judgments. It is not this court's function under CPLR article 53 to substitute our judgment for that of the courts of England. Not until there has been a determination by the courts of England that notwithstanding the passage of the six-year period, plaintiff should be granted

leave to execute upon its judgments, can the courts of New York enforce the judgments. We would note in this regard that, contrary to Special Term's conclusion, we do not consider the June 28, 1982 order of the English court which vacated the ex parte order for a stay of execution as a direction by that court to permit plaintiff to enforce the judgments. The only consequence of that order was to remove any obstacle to an attempt to seek leave to enforce the judgments. There is nothing in the record to indicate that that order addressed the merits of any claim of entitlement to enforcement of the judgments. The fact remains that under Order 46 the burden was still upon plaintiff to come forward and affirmatively request leave of the English court to issue a writ of execution.

Thus, we conclude that, absent a determination by the English courts pursuant to Order 46 granting plaintiff leave to issue a writ of execution, the judgments in question were not enforceable in England at the time of the commencement of the instant proceedings within the meaning of CPLR 5302 and defendants are, accordingly, entitled to summary judgment in their favor.

In light of our decision herein granting summary judgment to defendants, we need not address the questions raised with regard to the propriety of the order of attachment since that order is annulled by operation of law upon the entry of judgment in favor of defendants (CPLR 6224).

Accordingly, the order and judgment (one paper) entered March 3, 1983 should be reversed, on the law, plaintiff's motion for summary judgment in its favor should be denied, and upon searching the record (CPLR 3212, subd [b]), summary judgment should be granted in favor of defendants dismissing the action. The appeal from the order entered October 19, 1982, should be dismissed since the order of attachment was annulled by reversal of the order and judgment (one paper) in favor of plaintiff and the grant of summary judgment in favor of defendants (CPLR 6224). The appeal from the order dated August 16, 1982 should also be dismissed. That order was superseded by the order entered October 19, 1982 upon reargument.

Titone, J. P., Mangano and O'Connor, JJ., concur.

Order and judgment (one paper) of the Supreme Court, Suffolk County, entered March 3, 1983, reversed, on the law, without costs or disbursements, plaintiff's motion for summary judgment in its favor denied and, upon searching the record, summary judgment granted in favor of defendants dismissing the action.

Appeal from an order of the Supreme Court, Nassau County, dated August 16, 1982, dismissed, without costs or disbursements. That order was superseded by an order of the same court, entered October 19, 1982 upon reargument.

Appeal from the order entered October 19, 1982, dismissed as academic, without costs or disbursements. The order of attachment involved therein was annulled by reversal of the order and judgment (one paper) in favor of plaintiff and the grant of summary judgment in favor of defendants (CPLR 6224).