[No. 58057-0.  En Banc.  March 26, 1992.]

TONGA AIR SERVICES, LTD., *Appellant*, v. WAYNE FOWLER, *Respondent*.

720

*Harris, Orr & Wakayama*, by *Michael L. Charneski*, for appellant.

*Eaton & Gordon, P.S.*, by *Ronald D. Gordon*, for respondent.

GUY, J. — Tonga Air Services, Ltd., appeals a decision of the San Juan County Superior Court granting respondent Wayne Fowler's motion to deny execution of a foreign judgment against Mr. Fowler. The focus of this appeal is the proper application of RCW 6.40, the Uniform Foreign

Money-Judgments Recognition Act. This court has not previously had occasion to apply this statute.

## FACTS
### Procedural History

This appeal arises from the decision of the San Juan County Superior Court granting Mr. Fowler's motion to deny enforcement of a foreign judgment entered by a Tongan trial court. Tonga is an independent nation of islands in the South Pacific, formerly under British rule. The Tongan judgment followed a 5-day trial of a contract dispute between the parties.

On October 22, 1981, the Supreme Court of Tonga (a trial court) sitting at Nuku'alofa, Tonga, rendered a judgment in the case of Tonga Air Services v. Wayne Fowler, Civ. No. 23/'80. The 1981 judgment was in the amount of $82,170.26 in United States dollars. The appellant claims interest on this judgment of 12 percent per annum pursuant to RCW 4.56.110 and RCW 19.52.020. A petition and affidavit for recording this judgment, pursuant to RCW 6.36.025-.035 and 6.40.030, was filed in San Juan County Superior Court on June 10, 1988. A revised petition and affidavit was filed on June 13, 1988.

On February 27, 1989, the San Juan County Superior Court entered an order denying enforcement of the foreign judgment. The court held that the foreign judgment was not "conclusive", declaring:

> [T]he defendant's motion to deny enforcement . . . is hereby granted, for the sole reason that the judgment is not conclusive because the Order . . . granting plaintiff leave to execute upon the judgment, was obtained ex parte, without notice to the defendant . . ..

The transcript of the proceeding in San Juan County reveals that Tonga Air Services was free to reapproach the Supreme Court of Tonga for leave to execute upon the 1981 judgment after notice. Thereafter Tonga Air Services obtained a new hearing before the Supreme Court of Tonga to obtain leave to execute upon the judgment. Notice was

provided to the respondent and respondent's counsel. The Supreme Court of Tonga heard arguments from both parties on June 7 and September 21, 1989, regarding the propriety of granting leave to execute the 1981 judgment against Mr. Fowler. On November 3, 1989, the Supreme Court of Tonga ruled in favor of Tonga Air Services and again granted leave for the appellant to execute upon the judgment. The Tongan court issued an order and 9-page memorandum decision.

On November 14, 1989, Tonga Air Services filed its second amended petition and affidavit requesting recording of foreign judgment in San Juan County Superior Court. This was followed by a supplemental affidavit in support of recording of foreign judgment on November 17, 1989. On March 23, 1990, Mr. Fowler filed his supplemental memorandum in support of motion to deny enforcement of foreign judgment. On May 18, 1990, the Superior Court heard oral argument on Mr. Fowler's motion to deny enforcement of the foreign judgment.

On July 11, 1990, the San Juan County Superior Court issued a memorandum decision on defendant's motion to deny enforcement of foreign judgment. This decision granted Mr. Fowler's motion and for a second time denied enforcement of the Tongan judgment. Tonga Air Services filed a notice of appeal on August 7, 1990. We accepted direct review.

## Background

Respondent Fowler first went to Tonga in 1977 while performing missionary service work with the Seventh-Day Adventist Church. While in Tonga, Mr. Fowler, who was a professional pilot, became interested in starting a commercial air service in Tonga. Mr. Fowler discussed with Mr. Uliti Uata, a citizen of the Kingdom of Tonga, the prospects of entering a joint venture to establish an air service. They decided to form Tonga Air Services, Ltd. (TAS) for this purpose. Mr. Uata and Mr. Fowler formed TAS pursuant to a written agreement in 1978.

The agreement provided that Mr. Fowler would provide an airplane and parts, his expertise as a pilot and mechanic, and funds to capitalize the corporation. There is a great deal of dispute as to the facts of the management of the corporation. Generally it appears Mr. Fowler was in charge of operations and piloting and maintenance, while Mr. Uata, a businessman in Tonga, was in charge of bookkeeping and administration, and there the agreement stops. Disputes arose over finances, and both Mr. Fowler and Mr. Uata have accused each other of improprieties and mismanagement of TAS business. Resolution of these disputes is not necessary to decision of the matter at hand.

The source of the case before this court is a contract for the credit sale of airplanes by Mr. Fowler to TAS. Mr. Fowler had repossessed an airplane based on a default in purchase payments due to him from TAS. In November 1978, TAS and Mr. Fowler agreed in writing that Mr. Fowler would sell to TAS two aircraft, being a used DeHavilland Heron and a used twin Beechcraft Bonanza, for a total of $170,000 United States dollars. TAS agreed to pay Mr. Fowler in monthly installments of $3,696.23 United States dollars. The contract provided the following default and repossession terms:

> The "buyer" [TAS] hereby agrees that in the event of his failure to make timeous [*sic*] payment of any one or more of the monthly instalments, the "seller" [Fowler] shall be entitled to repossession of the "property". *The buyer would be entitled to a refund of monies paid less interest and any amount of expenses incurred by the seller on repossession and reselling of the "property".*

(Italics ours.) After the air service was in operation for some time, disputes arose between Mr. Uata and Mr. Fowler over many matters, including the suitability of the two airplanes for the purpose intended and the purchase of an airplane and parts. When TAS defaulted on an installment payment, Mr. Fowler (who had been terminated as pilot of TAS) filed suit against TAS to repossess the used DeHavilland airplane.

Mr. Fowler's repossession action was tried in Tonga before Judge H.H. Hill. The court ruled in Mr. Fowler's favor and awarded him possession of the airplane. After this repossession award, Mr. Fowler wrote to Judge Hill stating he would comply with the obligation to return to Tonga for an accounting of moneys owed to TAS under the above-quoted terms of the sale contract. In this letter, Mr. Fowler praised the Tongan court system for its fairness.

Mr. Fowler took the airplane and left Tonga for the United States in late 1979 where he sold the airplane in the state of Washington. He returned to Tonga in 1980. TAS filed suit in early 1980 to recover money due from Mr. Fowler in accordance with the refund term in the contract. The same Tongan judge, Judge Hill, presided over a 5-day trial in which Mr. Fowler was represented by the same Tongan advocate who had represented Mr. Fowler in his repossession action. A judgment was entered against Mr. Fowler for $82,170.26. This is the judgment TAS seeks to execute in this state.

Soon thereafter, Mr. Fowler left Tonga. He left behind no assets from which the judgment could be satisfied. Mr. Uata, on behalf of TAS, sent demand letters to the Shaw Island, Washington, address that Mr. Fowler had left with the Tongan court. Mr. Uata had once visited Mr. Fowler at this San Juan County address, but he states he never received a reply to the demand letters.

ISSUE AND REVIEW STANDARD

At issue is whether the San Juan County Superior Court properly applied RCW 6.40, the Uniform Foreign Money-Judgments Recognition Act, in denying the recognition and enforcement of the Tongan judgment TAS obtained against Mr. Fowler in 1981.

Mr. Fowler argued at trial, and continues to argue as grounds for upholding the trial court's ruling to deny enforcement of the Tongan judgment, that the judgment arrived at did not comport with the requirements of due process.

■ As a preliminary matter, there is dispute as to the appropriate standard of review of a Washington trial court decision to deny enforcement of a foreign judgment under RCW 6.40.040. Mr. Fowler argues that the superior court decision was a discretionary decision and is therefore reviewed under an abuse of discretion standard. TAS argues the trial court decision is to be reviewed de novo. *Bank of Nova Scotia v. Tschabold Equip. Ltd.*, 51 Wn. App. 749, 754-55, 754 P.2d 1290 (1988) addresses that issue, holding:

> Whether a judgment entered by a foreign nation will be recognized and enforced in Washington is determined by application of the Foreign Money-Judgments Act . . . [which] applies to "any foreign judgment that is final and conclusive and enforceable where rendered", RCW 6.40.020, and provides that such judgments are "enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit", RCW 6.40.030. . . .
>
> . . . .
>
> On appeal, this court may fully review all the evidence presented to the trial court, as the determination of whether statutory language applies to a factual situation is a conclusion of law . . ..

We accordingly review the matter de novo.

### ANALYSIS

This court has not previously had occasion to consider the Uniform Foreign Money-Judgments Recognition Act, RCW 6.40, and this case will give the court the opportunity to establish both the standards trial courts are to employ under the act in deciding whether foreign judgments should be recognized, and the standards for reviewing those trial court decisions. Background on the enforcement of foreign judgments is helpful to our analysis.

### Enforcement of Foreign Judgments Generally

Federal and state court judgments within the United States are enforced state to state pursuant to the full faith and credit clause of the United States Constitution, article 4, section 1, and 28 U.S.C. § 1738 (1988). For such judgments, the standard for recognition is federal in nature. *See* ALI-ABA Course of Study: *U.S.-Canadian Business Litiga-*

*tion Issues: A Comparative View Cosponsored by the Canadian Bar Association* (1989).

■ However, foreign country judgments are not vested with the protections of the full faith and credit clause or 28 U.S.C. § 1738, and no federal law in the absence of treaty or federal statute governs the recognition or execution of foreign country judgments in the United States. Thus, the recognition of such judgments is governed by applicable state law, even when that recognition is sought in federal court. ALI-ABA Course of Study, *supra.*

The procedure for recognizing and enforcing in the United States judgments entered in foreign countries is similar throughout the 50 states, with some states following common law decisions alone, and others, in states that have adopted the Uniform Foreign Country Money Judgments Recognition Act, through interpretation of that statute. The Uniform Foreign Country Money Judgments Recognition Act has been adopted in 17 states: Alaska, California, Colorado, Connecticut, Georgia, Illinois, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New York, Ohio, Oklahoma, Oregon, Texas, and Washington. The act applies only to money judgments. ALI-ABA Course of Study, *supra.*

Reciprocity of recognition and enforcement is generally not required for the enforcement of foreign money judgments in the United States. While a seminal United States Supreme Court case on the subject of enforcement of foreign judgments once imposed a reciprocity requirement, *Hilton v. Guyot*, 159 U.S. 113, 40 L. Ed. 95, 16 S. Ct. 139 (1895), this particular holding of the case no longer stands in most states. *See* Restatement (Third) of the Foreign Relations Law of the United States § 481, Reporters' Note 1 (1987).

The Uniform Foreign Money-Judgments Recognition Act provides that a foreign judgment shall not be refused recognition for lack of personal jurisdiction if the defendant was served personally in the foreign state, or voluntarily appeared in the proceeding, or agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved. RCW 6.40.050. Applying this rule to the

present circumstances, Mr. Fowler had brought suit against TAS in the Tongan courts and does not challenge Tongan jurisdiction.

## Application of RCW 6.40

We proceed then to address the question of whether the San Juan County Superior Court properly applied RCW 6.40 in denying enforcement of the 1981 Tongan judgment against Mr. Fowler.

Mr. Fowler argues that denial of recognition and enforcement of the judgment against him in Tonga is supported by the provisions of RCW 6.40.040 which state in pertinent part:

(1) A foreign judgment is not conclusive if
(a) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
. . . .
(2) A foreign judgment need not be recognized if
. . . .
(b) the judgment was obtained by fraud;
(c) the claim for relief on which the judgment is based is repugnant to the public policy of this state . . .[.]

Mr. Fowler makes the broad-based contention that "[t]he socio-legal system in Tonga made it impossible for [him] to obtain a fair trial". He specifically argues the following grounds for finding the Tongan judgment inconsistent with due process:

First, Mr. Fowler alleges the attorney he initially consulted in Tonga regarding issues to be litigated subsequently represented TAS against Mr. Fowler at the trial which resulted in the judgment in question.

Second, Mr. Fowler claims he was forced by the trial court in Tonga to go to trial in "complex business litigation" without an attorney, as Mr. Fowler was denied a continuance when his retained counsel wired from Fiji 3 days before trial that he was detained and unable to represent Mr. Fowler.

Third, Mr. Fowler argues he was denied the right at trial to proceed with counterclaims and setoff defenses by Tongan

laws which impose more onerous standards for the introduction of documentary evidence on foreigners than on Tongans.

Fourth, Mr. Fowler claims there was no record made of trial proceedings in Tonga.

Fifth, Mr. Fowler claims that a Tongan judge ignored clear requirements of Tongan law in allowing TAS to execute on its judgment 8 years after it was entered.

TAS argues that the San Juan County Superior Court decision denying enforcement should be reversed. TAS contends the judgment against Mr. Fowler should be enforced in Washington since Mr. Fowler was given a due process right to be heard in both the trial which granted the judgment against Mr. Fowler *and* the second proceeding in which the Tongan court gave leave for the petitioners to execute their judgment after a 6-year period. In the second proceeding which granted TAS leave to execute, Mr. Fowler was represented with argument and submitted affidavits.

TAS submits the Tongan judgment against Mr. Fowler is "conclusive", as required by RCW 6.40.020-.030. TAS argues Mr. Fowler had a meaningful opportunity to be heard and never challenged the personal or subject matter jurisdiction of the Tongan courts. These are the same Tongan courts which Mr. Fowler had previously used to obtain his repossession judgment against TAS based upon the same contract.

Mr. Fowler argues that the Tongan sense of justice is "feudal", an assertion which is not supported by an article Mr. Fowler cites for this proposition. *See* Powles, *The Common Law as a Source of Law in the South Pacific: Experiences in Western Polynesia*, 10 U. Hawaii L. Rev. 105, 116 (1987-1988).

We focus our due process inquiry on the proceedings in which the Tongan trial courts (1) ruled that Mr. Fowler owed TAS (under the express terms of their written agreement) a refund on airplane payments less expenses after Mr. Fowler repossessed a plane, and (2) granted leave to

TAS for a *second* time to execute its judgment after 6 years had passed.

Allegations of Fraud.

Mr. Fowler alleges "[t]he behavior of attorney Clive Edwards, who first consulted with Mr. Fowler in confidence and then represented TAS *against* Mr. Fowler in the very same action was violative of public policy and resulted in a judgment against Mr. Fowler being obtained by fraud, in violation of RCW 6.40.040(2)(b)." According to Mr. Fowler, Clive Edwards' fraud resulted in Mr. Fowler's losing TAS's suit for reimbursement of installment payments on the repossessed airplane.

█ As a discretionary ground for the nonrecognition of a foreign judgment, a claim of fraud in the obtaining of the judgment has been limited to cases of "extrinsic fraud"; that is, fraudulent conduct by the prevailing party that deprived the losing party of an adequate opportunity to present its case to the court (as opposed to "intrinsic fraud", *i.e.*, cases in which the judgment was based on the prevailing party's submission of perjured testimony or falsified documents). *See* ALI-ABA Course of Study, *supra*.

RCW 6.40.040(2)(b) states that an instance in which "the judgment was obtained by fraud" is a basis for the non-recognition of a foreign judgment. If in fact an attorney consulted with one party to an underlying foreign judgment "in great length and great detail" and subsequently represented the opposing party, this would state a case of extrinsic fraud.

But there are problems with Mr. Fowler's accusation against Mr. Edwards. First, neither the authorities cited by Mr. Fowler nor the disputed facts of Mr. Edwards' conduct support the proposition that: "the kind of behavior engaged in by Attorney Edwards is precisely the kind of extrinsic or collateral fraud which, having prevented Mr. Fowler from obtaining a fair submission of the controversy, justifies the denying enforcement of the judgment herein." Brief of Respondent, at 43. *See Wood v. Copeland Lumber Co.*, 41

Wn.2d 119, 247 P.2d 801 (1952); *Sears v. Rusden*, 39 Wn.2d 412, 235 P.2d 819 (1951); *Farley v. Davis*, 10 Wn.2d 62, 116 P.2d 263, 155 A.L.R. 1302 (1941).

■ Under *Wood v. Copeland Lumber Co.*, 40 Wn.2d at 121, it is the rule that the party alleging fraud must establish it by clear, cogent and convincing evidence. Mr. Fowler does not do so. Mr. Fowler alleges he telephoned Clive Edwards at Mr. Edwards' home in New Zealand to discuss his case and sent Mr. Edwards a followup letter. Mr. Edwards provides in his sworn affidavit an extensive refutation of Mr. Fowler's allegations. Mr. Edwards states Mr. Fowler called him at his home past 10 p.m. in November 1979, that the call was short and Mr. Edwards told Mr. Fowler he was not able to discuss a specific case without checking for possible conflicts in Tonga. Significantly, Mr. Fowler never claimed at his trial in Tonga that Mr. Edwards was improperly representing TAS against him.

It should be added that Mr. Edwards in his affidavit also provides an account of the trial against Mr. Fowler and refutes many of the other attacks Mr. Fowler has made on the Tongan legal system. By Mr. Fowler's own admission, Mr. Edwards was the most qualified attorney practicing in Tongan courts. Furthermore, Mr. Edwards refers to a letter from Mr. Fowler dated July 1980 that states: "I have no objection to Mr. Uata [of TAS] hireing [*sic*] you to help him out" regarding the continuing disputes between Mr. Fowler and Mr. Uata over the running of TAS.

We therefore reject Mr. Fowler's argument that the judgment against him should not be recognized due to the fraud of Clive Edwards. Mr. Fowler does not even approach a showing by clear and convincing evidence that the judgment against him was obtained by fraud under RCW 6.40.040(2)(b).

Complaint Regarding Inexperienced Counsel.

Mr. Fowler argues that he was denied a fair trial because he was denied a continuance at a time when his retained attorney from Fiji informed him on only 3 days' notice he could not appear for the start of the trial on the reimburse-

ment of purchase installments to TAS. However, Tom Finau, the licensed local advocate who represented Mr. Fowler at the reimbursement trial, was the same person who successfully represented Mr. Fowler in his repossession suit. The repossession suit in which Mr. Fowler prevailed and the refund suit in which Mr. Fowler was unsuccessful were based on the same paragraph of the contract of Mr. Fowler's sale of airplanes to TAS. Furthermore, the record indicates that Mr. Finau did not become involved only 2 days before trial; rather, it appears Mr. Finau filed Mr. Fowler's answer to TAS's complaint 7 months before trial. As with Mr. Fowler's fraud allegations, it appears from the record that Mr. Fowler was neither denied experienced counsel nor was he denied a meaningful opportunity to be heard.

Claim of Discriminatory Tongan Court Procedures.

Mr. Fowler argues he was denied the right at trial to proceed with counterclaims and setoff defenses by Tongan laws which impose more onerous standards for the introduction of documentary evidence on foreigners than on Tongans. At his trial he was not permitted to submit into evidence a box of records and receipts. This was because they were not "stamped" and in duplicate as required under Tongan law.

Mr. Fowler cites as discriminatory sections 3 and 4 of the Contract Act of Tonga. Section 3(2) provides:

> Whenever . . . the total *indebtedness of a Tongan to another person* for goods supplied exceeds twenty-five pounds no action to recover the price of such goods shall be maintainable for an amount exceeding twenty-five pounds unless [a written agreement is introduced] . . . executed in duplicate and . . . stamped and registered.

(Italics ours.) Mr. Fowler states a tougher evidentiary standard is placed on foreigners than on Tongans in trials — that the law restricts only evidentiary productions *against* Tongans.

However, the record indicates through the Tongan court's memorandum decision that in the trial on the refund dispute, receipts offered into evidence by TAS were also not admitted because they were not stamped. This contradicts

Mr. Fowler's claim that only he was subject to the stamping requirement and thus discriminated against.

Since the record indicates that TAS, too, was denied the opportunity to submit certain records and receipts into evidence on the same basis used to deny Mr. Fowler's productions, Mr. Fowler's discrimination claim must be rejected.

Lack of Verbatim Transcript.

Fowler claims there was no record made of trial proceedings in the suit in Tonga in which TAS obtained judgment against him. The record is not clear on the completeness of the recording of the proceedings from the Tongan trial in 1981. According to the Assistant Registrar of the Tonga Supreme Court, the shorthand book in which evidence of trial is normally recorded is usually held for only 30 days after judgment *if no appeal is filed*. According to the deposition of Clive Edwards, the attorney for TAS in this case, it appears the Tongan courts do not normally keep a verbatim transcript of proceedings and in this case did not keep a verbatim transcript. Rather, Mr. Edwards states in his affidavit:

> There are two Books kept by the Court covering the evidence in the trial of this case. The first Book is called the Exhibit Book. In this Book a record of all exhibits are entered and numbered. During the trial it was recorded by the Court Registrar. The second Book is the Judges Book in which he records the evidence given orally during the hearing. This Book is kept in the Judges Chamber and not in the Registry office.

Mr. Fowler was apparently offered, for a charge, copies of whatever records were held in the registrar's office. At any rate, it is significant that Mr. Fowler *did not appeal* and instead chose to leave Tonga, thus prejudicing whatever opportunity he might have had to obtain documents which might, if they existed, have been destroyed due to the passage of time. Mr. Fowler's suggestion that there is no such thing as a meaningful appellate process in Tonga is not borne out by the record. Both the Powles article submitted by Mr. Fowler and Mr. Edwards' affidavit indicate that the

Privy Council of Tonga is a competent appellate body capable of independent review.

■ Furthermore, in the Ninth Circuit case of *British Midland Airways Ltd. v. International Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974), it was held that the lack of a verbatim transcript in a foreign proceeding did not violate due process and was not grounds for the nonrecognition of a foreign judgment.

Leave To Execute on the More Than 6-Year-Old Judgment.

■ Mr. Fowler claims that a Tongan judge ignored clear requirements of Tongan law in allowing TAS to execute on its judgment 8 years after it was entered. One of the requirements of our Uniform Foreign Money-Judgments Recognition Act is that the foreign judgment be properly recognizable in the foreign jurisdiction from which it originated.

Mr. Fowler has submitted that the Supreme Court of Tonga had no basis to exercise discretion in allowing TAS leave to execute on its judgment after more than 6 years had passed. Mr. Fowler also makes the sweeping contention that he could not have an impartial tribunal in Tonga.

Under chapter 14, sections 3 and 4 of the Civil Law of Tonga,[1] gaps in Tongan law are filled with English law. For the San Juan County Superior Court proceedings, both parties obtained expert opinions on the relationship between English law and Tongan law. The experts on English law for both parties agreed that Order 46, rule 2 regarding the British system's "Writ of Execution" would hand a Tongan judge discretion to grant leave to issue execution on a Tongan judgment more than 6 years old:

---

[1]"3. Subject to the provisions of this Act, the Court shall apply the common law of England and the rules of equity, together with statutes of general application in force in England at the date on which this Act shall come into force.

"4. The common law of England, the rules of equity and the statutes of general application referred to in section three of this Act shall be applied by the Court —

"(a) only so far as no other provision has been, or may hereafter be, made by or under any Act or Ordinance in force in the Kingdom . . .".

2. — (1) A writ of execution to enforce a judgment or order may not issue without the leave of the Court in the following cases, that is to say: —
(a) where six years or more have elapsed since the date of the judgment or order . . ..

Brief of Appellant app. A-1. The expert for TAS, David Johnson, a senior English barrister qualified as Queen's Counsel who practices in London, stated it was within the Tongan court's discretion in this case to grant leave after 6 years since TAS's letters to Mr. Fowler on Shaw Island were not answered and Mr. Uata of TAS believed Mr. Fowler had moved to another address. We agree.

The Tongan court stated in its memorandum decision the principles which guided its decision to grant leave to execute. That decision further cited the English authorities which grant the discretion it exercised:

The relevant law shows that in reaching a decision on the application this Court should be guided by the following principles: —
(a) the decision is a matter of judicial discretion, to be properly exercised according to the known rules of law: *Lee v. Bude and Torrington Junction Railway Co (1871) LR 6 CP 576; W.T. Lamb & Sons v. Rider (1948) 2 KB 331; (1948) 2 All ER 402 (CA), 408.*
(b) there must be adequate reasons for the long delay in enforcing the judgment, meaning "proper and just ground" (*Lee v. Bude p 581*)[.] Examples are repeated unsucessful [*sic*] attempts by the creditor to contact the debtor and attempts by the debtor to conceal his whereabouts (*Lamb v. Rider p 405 D*). It depends on the degree of diligence which might reasonably be required and the degree of change which has occurred. Delay which would otherwise bar the Plaintiff may be excused if it is explained: *Bank of Montreal v. Bailey & Bailey (1943) Ontario Reports 406, 411*[.]
(c) the exercise of the discretion depends on whether the balance of justice or injustice is in favour of granting the remedy or withholding it: *Bank of Montreal v. Bailey p 411 quoting Harris v. Lindeborg (1931) SCR 235. (1931) 1 DLR 945.*

Clerk's Papers, at 863. These factors, especially the great geographical distance involved, would allow a Tongan or

English judge discretion for excusing TAS's delay in seeking leave to execute.

■ Since we conclude the decision of the Tongan court to grant leave to execute was a discretionary act, we note the rule that discretion is not abused unless its exercise can be called manifestly unreasonable. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984). It is acknowledged by even Mr. Fowler's own English law expert that if the Tongan judge had the discretion to grant the leave to execute, "it would be difficult to quarrel with a discretion exercised one way or the other." Discretion in granting the leave was not abused in this case. Mr. Fowler left Tonga shortly after he was unsuccessful in court. He left no assets behind for the satisfaction of judgment. He returned to Shaw Island, Washington, some 10,000 miles across the ocean. The Tongan court noted in its memorandum decision, and it remains undisputed, that at least eight letters sent to Mr. Fowler by TAS at his last known Shaw Island address were never answered. Furthermore, Mr. Fowler has not denied receiving these letters. The Tongan court additionally observed that Mr. Fowler would not suffer any prejudice by reason of delay in execution.

■ In the case of *Overseas Dev. Bank in Liquidation v. Nothmann*, 103 A.D.2d 534, 543, 480 N.Y.S.2d 735 (1984) it is stated that it is not the function of an American court to substitute its judgment for that of a foreign court after the foreign court's ruling that leave to execute should be granted under Order 46 of the English Rules of Supreme Court. TAS submits that while the San Juan County Superior Court may have *disagreed* with the Tongan court's decision to grant leave, this was not adequate basis for refusing to recognize the judgment in Washington. We agree. The real issue is whether the Tongan judge reached a supportable conclusion in exercising discretion.

Lastly, we note that judgments are enforceable in Washington for 10 years after the date of entry under RCW

6.17.020. Absent a showing of any real prejudice to Mr. Fowler from the delay of 8 years, and considering Mr. Fowler's departure from Tonga and refusal to answer correspondence, there was basis for the Tongan court to grant leave when TAS requested to enforce the 1981 judgment.

We distinguish the chief case relied upon by the San Juan County Superior Court in support of its ruling denying enforcement. *R.R. Gable, Inc. v. Burrows*, 32 Wn. App. 749, 649 P.2d 177 (1982), *cert. denied*, 461 U.S. 957 (1983) did involve the refusal of a Washington court to recognize a judgment from another jurisdiction (California), but in that case the denial of a "meaningful opportunity to be heard" stemmed from the fact that *no one ever informed the Washington defendants of the court's refusal to file their answer to the plaintiff's complaint.* Notice was denied in *R.R. Gable*; it was not in this case.

■■ Furthermore, *Untersteiner v. Untersteiner*, 32 Wn. App. 859, 863 n.3, 650 P.2d 256 (1982) declares that the public policy of the State of Washington is not violated simply because there is a difference between the laws of a foreign state and this State. The laws and legal systems of different nations reflect historic and cultural diversity of their people. These laws and systems are designed to meet the needs of those people. Accordingly, differences of systems and of issues addressed by laws rationally exist between nations. The inquiry of this court in applying the Uniform Foreign Money-Judgments Recognition Act is to ensure that before a foreign judgment may be enforced in this state, the judgment needs to have been arrived at in the application of basic standards of fairness. That inquiry includes whether due process was honored; whether the parties were given the right to be heard and to be represented; and where a court imposes a discretionary ruling, whether that ruling was reasoned or arbitrary. In the record before us, there is nothing to indicate unfairness, bias or an arbitrary ruling in the application of the laws or in the conduct of proceeding in the Tongan courts. On the

contrary, we recognize an adherence to due process, orderly and fair proceedings, and a high degree of professionalism in the manner in which the Tongan courts dealt with the issues presented in this case.

CONCLUSION

We reverse the San Juan County Superior Court ruling and remand for recognition and entry of the Tongan judgment against respondent Wayne Fowler in San Juan County.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.